IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAVAGHN WAPLES, | § | |
| | § | |
| Defendant Below, Appellant | § | No. 368, 2021 |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID No. S1812013426B |
| Appellee. | § | |

Submitted: April 19, 2023
Decided: April 28, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices, constituting the qualified and available members of the Court *en Banc*.[1]

## **ORDER**

On this 28th day of April 2023, it appears to the Court that:

(1)    This appeal comes to the Court following remand.  In our remand order, we requested that the Superior Court expand the record and hold a hearing on defendant Javaghn Waples' constitutional claim under *Batson v. Kentucky* that the sole black member of the jury was allegedly struck from the panel because of her race.[2]  After the remand hearing, the Superior Court held that Waples had not demonstrated a *Batson* violation.  We agree and affirm the Superior Court's judgment.

---

[1] Supreme Court Rule 4(f) and Internal Operating Procedure XVII(2).
[2] *Batson v. Kentucky*, 476 U.S. 79, 85 (1986).

(2)     A Superior Court jury convicted Waples of Possession of a Firearm by a Person Prohibited.   While selecting the jury, the State exercised peremptory challenges against two jurors with criminal records, one of which was the only black person called to be seated as a juror.  Defense counsel moved to strike the all-white jury because black jurors were not represented in the jury array.  The State responded that it had a neutral reason for striking the black juror – a criminal record that might cause bias against the State – and thus it had not violated *Batson*.  The Superior Court denied the motion.

(3)     On appeal from his conviction, Waples contended that he made a *prima facie* showing that the State engaged in purposeful discrimination by striking the only black juror.  More specifically, he argued that the Superior Court erred by not analyzing his motion under *Batson*.[3]  Under *Batson*, the court applies a three-part test to determine whether a party exercised a peremptory challenge for a racially discriminatory purpose:

> First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race . . . . Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question . . . . Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.[4]

---

[3] *See id.* at 85.
[4] *Robertson v. State*, 630 A.2d 1084, 1089 (Del. 1993) (citing *Hernandez v. New York*, 500 U.S. 352, 358–59 (1991)).

(4)     After briefing and oral argument, this Court decided that an expansion of the record was appropriate and remanded the case to the Superior Court for a hearing on the defendant's *Batson* claim.  We instructed that:

> [t]he hearing should be conducted in a courtroom with the defendant present.  The State should inform the Superior Court and the defendant of the specific nature of the black juror's misdemeanor criminal record. The State should also inform the Superior Court and the defendant as to whether any of the 14 white jurors who were seated on the jury or the one white juror it struck had misdemeanor criminal records, and, if so, the specific nature of those records.  If any of the 14 white jurors who were seated had a misdemeanor criminal record, the State should be offered an opportunity to explain why it did not strike that juror.  The Superior Court should make any other inquiries the court deems appropriate.  After both parties have had an opportunity to be fully heard, the Superior Court judge should perform the three-step *Batson* analysis and make a determination as to each of the three steps.[5]

(5)     On December 1, 2022, the Superior Court held the remand hearing with the defendant present.  First, the court inquired into the existence and nature of the criminal records of the black juror and the fourteen seated white jurors.  The prosecutor in Waples' case testified that he used a peremptory challenge to strike a white juror because he had a fourth driving under the influence conviction, a Title 21 felony.  The prosecutor explained that he generally only strikes jurors with Title 21 convictions when the offense was for driving under the influence.

(6)     The prosecutor then used a peremptory challenge to strike the black juror who replaced the struck white juror.  The black juror had two Title 11 criminal

---

[5] *Waples v. State*, No. 368, 2021 (Del. Aug. 23, 2022) (ORDER).

3

convictions – a 1995 conviction for disorderly conduct and a 1987 conviction for shoplifting. The prosecutor testified that he does not consider the age of Title 11 criminal convictions when considering peremptory challenges, and that his practice is to strike potential jurors with such convictions due to bias they may have against the State in a criminal matter. No other jurors had Title 11 convictions. Some had Title 21 traffic violations that did not qualify as misdemeanors.

(7) After hearing the testimony, the Superior Court conducted the *Batson* analysis. The court held that Waples did not make a *prima facie* showing that the prosecutor exercised a peremptory challenge based on race. According to the court, the prosecutor struck the black juror for potential bias against the State based on her criminal record. The court supported its finding by pointing to the prosecutor's use of a peremptory challenge against the white juror. For the other *Batson* factors, the court found that the prosecutor's concern about juror bias was a sufficient race neutral explanation for striking the black juror. In response to the State's race-neutral explanation, the Superior Court also found that Waples had not carried his burden of proving purposeful discrimination.

(8) On appeal after remand, Waples argues that the Superior Court mis-applied *Batson*. According to Waples, the fact that the court struck the only black juror was sufficient for a *prima facie* showing of a race-based peremptory challenge. Further, according to Waples, the State's race-neutral explanation for the peremptory

strike was unreasonable as it did not account for all jurors who could have developed negative biases against the justice system. Waples argues that the Department of Justice does not conduct out-of-state record checks for the jury pool, meaning that any of the white jurors could have had one or more misdemeanors on their record like the black juror who was struck. Waples also contends that a juror's interactions with the court system through traffic violations are as likely to engender negative biases towards the justice system as criminal convictions. Lastly, Waples argues the Superior Court should have consulted statistical information when determining whether Waples met his burden of proving intentional discrimination.

(9) The State responds by noting that the Superior Court followed this Court's instructions and had sufficient reasons for rejecting Waples' *Batson* claim. According to the State, even if there was a *prima facie* showing that race was a factor in the State's peremptory challenge, the court's ultimate finding that there was no racial discrimination was correct because (a) Waples provided no supporting evidence of racial discrimination and (b) the prosecutor provided a credible explanation for the peremptory strike.

(10) When evaluating the trial court's *Batson* analysis, "we apply a more deferential standard of review to the trial court's ultimate conclusion on discriminatory intent."[6] In other words, "where the trial court properly conducts the

---

[6] *Jones v. State*, 938 A.2d 626, 635 (Del. 2007).

5

three part *Batson* analysis, we review its findings under a clearly erroneous standard of review."[7]  After considering the parties' arguments, we conclude that, even if Waples made a *prima facie* showing of a race-based peremptory strike, the court properly found that the State articulated a race neutral explanation for the peremptory strike – that an individual with criminal conviction might harbor negative feelings against the State – and Waples did not prove purposeful discrimination.

(11)   Waples' attempts to discredit the State's explanation for the peremptory strike are unpersuasive.  The State has no duty to undertake nationwide criminal record checks as a counterweight to the proper exercise of peremptory challenges.  Waples also provides no support for his contention that a traffic violation is as likely to produce lasting negative biases against the justice system as a criminal conviction.  Finally, the "statistical evidence" Waples relies on – that one out of two of the State's challenges was to a black juror – is just one factor the court reviews to determine whether the defendant made a *prima facie* showing of discrimination, and whether the State acted with discriminatory intent.[8]  After hearing from the prosecutor and considering all of the evidence, the Superior Court concluded that the State did not

---

[7] *Id.*

[8] *See id.* at 633–35 (State's exercise of 75% of its peremptory strikes – a rate more than double the percentage of minorities in the original jury pool – supported a *prima facie* case and was relevant to *Batson*'s third prong but is only one factor in the overall analysis).

act out of purposeful discrimination.  That factual finding was not clearly erroneous.

The Superior Court did not err when it found that no *Batson* violation occurred.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice
